The defendant, Hector Pineiro, pleaded guilty in Superior Court to multiple crimes of violence, unlawful firearm possession, and drug distribution, including armed assault with the intent to murder. The plea judge imposed a probationary sentence on the defendant requiring global positioning system (GPS) monitoring and prohibiting "gang affiliation," possession of drugs or firearms, and violations of the criminal law. The defendant now appeals the revocation of his probation for violating those conditions. Concluding the conditions were constitutional and that there was adequate evidence of the violations, we affirm.
1. Validity of probation condition requiring no gang affiliation. We uphold "conditions of probation that affect First Amendment [to the United States Constitution] rights so long as they are 'reasonably related to a valid probation purpose,' " Commonwealth v. Pereira, 93 Mass. App. Ct. 146, 153 (2018), quoting from Commonwealth v. Power, 420 Mass. 410, 417 (1995), including deterrence, public safety, and rehabilitation. See Commonwealth v. Ericson, 85 Mass. App. Ct. 326, 338 (2014). "These goals are best served if the conditions of probation are tailored to address the particular characteristics of the defendant and the crime," Commonwealth v. Riz, 90 Mass. App. Ct. 10, 12 (2016), quoting from Commonwealth v. Pike, 428 Mass. 393, 403 (1998), and judges have "significant latitude" in placing a defendant on probation and imposing reasonable conditions. Pereira, supra, quoting from Commonwealth v. Rousseau, 465 Mass. 372, 389-390 (2013).
The defendant in this case was convicted of violent crimes involving illegal firearms and drug-dealing -- both hallmarks of gang-related street crime. See Commonwealth v. Mitchell, 468 Mass. 417, 426-427 (2014) (criminal street organizations marked by violence related to supply of illegal drugs and firearms); Commonwealth v. Lopes, 478 Mass. 593, 604 (2018), citing Commonwealth v. Swafford, 441 Mass. 329, 332 (2004) (allowing evidence of gang affiliation to establish defendants' retributive motive in murder conviction). Because gang involvement would likely involve substantial temptations to commit the sorts of crimes for which the defendant had been placed on probation, the plea judge "could reasonably conclude" that avoiding gang affiliation would "improve the defendant's chances of dealing successfully with his problems." Commonwealth v. Williams, 60 Mass. App. Ct. 331, 332-333 (2004). Specifically, the condition would deter the defendant from further involvement in similar offenses, prevent harm to potential victims, and direct the defendant away from criminal influences. See Ericson, 85 Mass. App. Ct. at 339 ("judge reasonably could have concluded that imposition of the [condition] was properly related to the probationary goals of protection of the public and deterrence"). The condition, therefore, was reasonable under the circumstances and within the plea judge's discretion.
The order provided reasonable guidance to what activities were prohibited, see Riz, 90 Mass. App. Ct. at 13, based on the common understanding of the term "gang affiliation." A probation condition is valid if it provides "an imprecise but comprehensible normative standard so that [people] of common intelligence will know its meaning." Commonwealth v. Kendrick, 446 Mass. 72, 75 (2006), quoting from Commonwealth v. Orlando, 371 Mass. 732, 734 (1977). A person of common intelligence would understand that a prohibition on gang affiliation directed the defendant not to affirmatively associate himself as a member or supporter of a criminal street gang. Cf. Black's Law Dictionary 70 (10th ed. 2014) (defining "affiliation" as "[t]he connection or involvement that someone ... has with a[n] ... organization"). This would not prohibit the defendant from interacting or living in proximity with gang members so long as the defendant's involvement was passive, and he did not affirm his association with the gang by participating in gang activities or otherwise expressing his loyalty to the gang.[2] As a result, the condition here was not overbroad, and the defendant received "fair warning" of what would violate the condition prohibiting "gang affiliation." See Kendrick, supra.
2. Adequacy of evidence of probation violations. "A determination whether a violation of probation has occurred lies within the discretion of the hearing judge." Commonwealth v. Bukin, 467 Mass. 516, 519-520 (2014). The question is whether the defendant "more likely than not violated the conditions of his probation," Commonwealth v. Kelsey, 464 Mass. 315, 324 (2013), and it is "the exclusive province of the hearing judge to assess the weight of the evidence." Bukin, supra at 521.
In this case, there was adequate evidence to find the defendant violated his conditions on multiple occasions. See Commonwealth v. Doucette, 81 Mass. App. Ct. 740, 744 (2012).[3] A police officer identified the defendant in the Providence Street Gang's "diss video" on YouTube intended to insult and threaten a rival street gang. We have viewed the video, and the probation violation judge (hereinafter, judge) was justified in finding that the defendant's participation in the video was an affirmative act of affiliating himself with the Providence Street Gang. See Commonwealth v. Foster, 77 Mass. App. Ct. 444, 451 (2010) ("In light of all the evidence, including ... testimony and the police reports, the judge was warranted in finding ... that the defendant had violated the terms of his probation").
The judge also was warranted in finding that the defendant, while driving his motor vehicle, shot at another motor vehicle in January, 2016. Although the eyewitness could not identify the defendant, he did identity the motor vehicle used, and two officers identified the motor vehicle as the defendant's. GPS data, moreover, placed the defendant at the scene at the time of the shooting. From this evidence, the judge could find that the defendant was the shooter. See Commonwealth v. Coates, 89 Mass. App. Ct. 728, 732 (2016) (identity may be proved by circumstantial evidence).
Regarding the February, 2016, incident, a police sergeant testified that the defendant physically resisted apprehension in his home. Once the defendant was restrained, the sergeant observed a firearm and cocaine in the defendant's home. The judge could credit this testimony and find that the defendant unlawfully possessed the contraband. See Foster, 77 Mass. App. Ct. at 450. Indeed, regarding this incident, the defendant challenges only the evidence supporting the judge's finding that the defendant was leaving his home at the beginning of this incident. Whether or not the defendant was leaving, the judge's finding of a violation of probation was well supported by the evidence.
3. Use of GPS evidence. We have previously decided that no search in the constitutional sense occurs when the police obtain historical GPS location data concerning a probationer subject to GPS surveillance as a condition of probation. See Commonwealth v. Johnson, 91 Mass. App. Ct. 296, 307 (2017). The defendant here signed the probation order and a GPS data disclosure form acknowledging that his physical location as determined by GPS could "be shared with ... law enforcement" and that his GPS data was "not private and confidential." See ibid. ("[O]nce the defendant consented to the pretrial release condition of the GPS monitoring, it is not reasonable to conclude that he could control or limit how that GPS data would be used, including for a law enforcement purpose"). Accordingly, the judge properly admitted and considered the defendant's GPS location data in determining whether he violated the conditions of his probation.
Order revoking probation and imposing sentence affirmed.

For example, a reasonable person would not take "affiliation" with a political party to encompass a person knowing or living with anyone registered to that particular party. It would, however, encompass donating, attending rallies or showing public support, or campaigning on its behalf.

The defendant presents no argument that the judge erred in finding that the defendant possessed numerous items of contraband in October, 2015. In any event, the evidence supported this finding.