NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12279

COMMONWEALTH  vs.  JULIE A. ELDRED.


Middlesex.     October 2, 2017. - July 16, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Practice, Criminal, Probation.  Drug Addiction.



Complaint received and sworn to in the Concord Division of
the District Court Department on June 13, 2016.

A proceeding on violation of probation was heard by Sabita
Singh, J., and a question of law was reported by her.

The Supreme Judicial Court granted an application for
direct appellate review.


Lisa M. Newman-Polk (Benjamin H. Keehn, Committee for
Public Counsel Services, also present) for the defendant.
Maria Granik, Assistant Attorney General, for the
Commonwealth.
The following submitted briefs for amici curiae:
Amy M. Belger for Massachusetts Medical Society & others.
Martha M. Coakley & Rachel C. Hutchinson for National
Association of Drug Court Professionals.
Steven Fitzgerald, pro se.
Matthew R. Segal & Adriana Lafaille for American Civil
Liberties Union of Massachusetts, Inc., & others.

LOWY, J.  Following a probation violation hearing, a judge in the District Court found that the defendant, Julie A. Eldred,[1] had tested positive for fentanyl, in violation of a condition of her probation requiring her to abstain from using illegal drugs. The judge ordered that the conditions of her probation be modified to require her to submit to inpatient treatment for drug addiction.  The defendant appeals from that finding and disposition.  The judge also reported a question drafted by the defendant concerning whether the imposition of a "drug free" condition of probation, such as appeared in the original terms of defendant's probation, is permissible for an individual who is addicted to drugs and whether that person can be subject to probation violation proceedings for subsequently testing positive for illegal drugs.

We conclude that, in appropriate circumstances, a judge may order a defendant who is addicted to drugs to remain drug free as a condition of probation, and that a defendant may be found to be in violation of his or her probation by subsequently testing positive for an illegal drug.[2]  Accordingly, we affirm

---

[1] We refer to Julie Eldred as the defendant, rather than the probationer, for purposes of consistency and clarity.

[2] We acknowledge the amicus briefs submitted by the American Civil Liberties Union of Massachusetts, Inc., Center for Public Representation, and Prisoners' Legal Services; Massachusetts Medical Society, American Academy of Addiction Psychiatry, Association for Behavioral Healthcare, Grayken Center for

the finding that the defendant violated her probation and the order requiring her to submit to inpatient treatment for her addiction.

Background and prior proceedings.  On July 18, 2016, the defendant was arraigned on a felony charge of larceny for stealing jewelry valued over $250 from the home of an individual for whom the defendant provided dog-walking services.  The defendant admitted to the police that she had stolen the jewelry and had sold it to obtain money to support her heroin addiction. On August 22, 2016, the defendant admitted to sufficient facts to warrant a finding of guilt.  A judge in the District Court continued the defendant's case without a finding, and imposed a one-year term of probation with special conditions related to her substance abuse that included requiring her to remain drug free, submit to random drug screens, and attend outpatient substance abuse treatment three times each week.[3]  Prior to accepting the terms of her probation, the defendant did not object to the condition that she remain drug free, or otherwise

_____

Addiction Medicine at Boston Medical Center, Massachusetts Organization for Addiction Recovery, Massachusetts Society for Addiction Medicine, Northeastern University School of Law's Center for Health Policy and Law, and twenty-eight others; Steven Fitzgerald; and the National Association of Drug Court Professionals.

[3] The special condition of probation requiring the defendant to remain drug free was announced in open court, and was included in the written probation agreement, which the defendant signed.

express that her diagnosis of substance use disorder (SUD) rendered her incapable of remaining drug free.

On August 29, 2016, the defendant began outpatient addiction treatment at a hospital. As a component of her treatment, an addiction specialist prescribed the defendant a medication that is used to treat symptoms of withdrawal and addiction to opiates.

On September 2, 2016, only eleven days after the case had been continued without a finding and the probation had been imposed, the defendant tested positive for fentanyl, following a random drug test administered by her probation officer. The probation officer encouraged the defendant to enter inpatient treatment, but the defendant allegedly refused. The probation officer then filed a "Notice of Probation Detention Hearing"[4] with the District Court. The detention hearing was conducted on the same day as the defendant's positive drug test because, as her probation officer testified, the defendant's parents were out of town and "it was the Friday before Labor Day and [the probation officer] felt that [the probation officer] couldn't

---

[4] According to Rule 5(a) of the District/Municipal Court Rules for Probation Violation Proceedings (LexisNexis 2016), a probation detention hearing "may be conducted to determine whether a probationer shall be held in custody pending the conduct of a probation violation hearing. The issues to be determined at a probation detention hearing are whether probable cause exists to believe that the probationer has violated a condition of the probation order, and, if so, whether the probationer should be held in custody."

have [the defendant] leave [the probation officer's] office testing positive for Fentanyl."

Based on the evidence presented at the hearing, the judge, who was the same judge who had accepted the defendant's plea and imposed the conditions of probation, determined that there was probable cause to believe the defendant had violated the "drug free" condition of her probation by using fentanyl. Because defense counsel was not able to secure a placement for the defendant at an inpatient treatment facility, the judge ordered that the defendant be held in custody until a placement became available. The defendant was released into an inpatient treatment facility after ten days in custody.

On November 22, 2016, a different District Court judge presided over the defendant's probation violation hearing. Despite conceding that she had used fentanyl, the defendant contested that she had violated the terms of her probation. The defendant argued, for the first time, that she had been diagnosed with SUD, which rendered her incapable of remaining drug free. In the defendant's view, her use of drugs could not constitute a wilful violation of her probationary condition to remain drug free. She submitted several affidavits from experts in support of her claim; however, no expert testimony was offered at the hearing to opine on SUD or its potential effects on the brain.

The judge determined that the defendant had violated the drug free condition of her probation by testing positive for fentanyl. The defendant filed a motion to vacate the condition of probation requiring her to stay drug free, arguing that the condition violated various State and Federal constitutional rights. That motion was denied. The judge then modified the conditions of the defendant's probation by adding the condition that she continue inpatient treatment. The judge also allowed the defendant's motion to report to the Appeals Court the question concerning the imposition of the condition of probation that the defendant remain drug free. We granted the defendant's motion for direct appellate review.[5]

Discussion. 1. The reported question. The judge sought to report the question to the Appeals Court under Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004). It is doubtful she had the authority to do so. Rule 34, like the Rules of Criminal Procedure generally, applies only in criminal cases. The matter before the judge -- a probation violation hearing -- was not a criminal matter. See Commonwealth v. Patton, 458 Mass. 119, 124-125, 129 (2010). Moreover, the reported question, as it was

---

[5] After we granted the defendant's motion for direct appellate review of the question reported to the Appeals Court, the defendant separately appealed from the decision that the defendant was in violation of probation. We transferred that appeal to this court on our own motion and consolidated the two matters.

originally formulated, contains a factual conclusion about the science of addiction that was not resolved at the trial court level.  See Commonwealth v. Duncan, 467 Mass. 746, 753 n.7, cert. denied, 135 S. Ct. 224 (2014) ("We answer only the reported question of law, not the question of fact"); Commonwealth v. Yacobian, 393 Mass. 1005, 1005-1006 (1984) (declining to rule on questions of law predicated on unresolved factual issues).[6]  Nevertheless, this question presents issues of significant magnitude that require resolution, especially where they have been fully briefed and at least one issue appears to be moot.  We therefore employ our general superintendence power to address the matter.  See Cobb v. Cobb, 406 Mass. 21, 24 n.2 (1989).  See also Commonwealth v. Doe, 420 Mass. 142, 145-146 (1995), overruled on another ground by Commonwealth v. Pon, 469 Mass. 296 (2014).  But first, in order to make the question one

---

[6] In its original form, the reported question presumes that there is a scientific consensus concerning SUD's impact on the brain, particularly how it affects an individual's ability to abstain from using drugs.  Embedded within the question, which was drafted and submitted by the defendant, is the conclusion that this scientific issue was resolved in the defendant's favor.  This issue, however, was not subject to adversarial scrutiny, let alone resolved.  This is elucidated by the fact that the parties and amici present varying models of addiction and varying conclusions concerning the science of addiction.  For example, the defendant advances a model of addiction where addiction is understood as a brain disease that deprives an individual of his or her free will to abstain from using drugs.  In contrast, the Commonwealth advances a behavioral model of addiction which postulates that SUD may affect an individual's urge to use substances, but it does not render that individual without the free will to use substances.

that can be answered on the record before us, we reformulate the reported question as follows:

> "Where a person who committed a crime is addicted to illegal drugs, may a judge require that person to abstain from using illegal drugs as a condition of probation?  If that person violates the 'drug free' condition by using illegal drugs while on probation, can that person be subject to probation revocation proceedings?  Additionally, at a detention hearing, if there is probable cause to believe that a person with a 'drug free' condition of probation has violated that condition by using an illegal drug, may that person be held in custody while awaiting admission into an inpatient treatment facility, pending a probation violation hearing?"

As explained infra, given relevant statutes, and court rules and policies, coupled with the goals of probation, we answer each portion of the reformulated question in the affirmative.

The circumstances of the defendant's case exemplifies why the imposition of a drug free condition of probation and the enforcement of such a condition are permissible within the confines of the probation process.  From crafting special conditions of probation to determining the appropriate disposition for a defendant who has violated one of those conditions, judges should act with flexibility, sensitivity, and compassion when dealing with people who suffer from drug addiction.  The rehabilitative goals of probation, coupled with the judge's dispositional flexibility at each stage of the process, enable and require judges to consider the unique

circumstances facing each person they encounter -- including whether that person suffers from drug addiction. This individualized approach to probation fosters an environment that enables and encourages recovery, while recognizing that relapse is part of recovery.

2. <u>Probation</u>. a. <u>Disposition</u>. As an alternative or supplement to incarceration, probation is "a legal disposition which allows a criminal offender to remain in the community subject to certain conditions and under the supervision of the court." <u>Commonwealth</u> v. <u>Durling</u>, 407 Mass. 108, 111 (1990). The primary goals of probation are twofold: rehabilitation of the defendant and protection of the public from the defendant's potential recidivism. <u>Commonwealth</u> v. <u>Goodwin</u>, 458 Mass. 11, 15 (2010). <u>Commonwealth</u> v. <u>Lapointe</u>, 435 Mass. 455, 459 (2001) (other goals include "punishment, deterrence, and retribution" [citation omitted]).

"The success of probation as a correctional tool depends on judges having the flexibility at sentencing to tailor probation conditions to the circumstances of the individual defendant and the crime that he [or she] committed." <u>Goodwin</u>, 458 Mass. at 16. See <u>Lapointe</u>, 435 Mass. at 459 (judge may consider factors not relevant at trial, such as hearsay information about defendant's character, behavior, and background). Authority to tailor probation conditions is found in G. L. c. 276, § 87,

which states that a judge may impose "such conditions as [the judge] deems proper."  See Boston Municipal Court and District Court Sentencing Best Practice Principles 5.  See also Criminal Sentencing in the Superior Court:  Best Practices for Individualized Evidence-Based Sentencing 8 ("Special conditions of probation should be narrowly tailored to the criminogenic needs of the defendant/probationer while providing for the protection of the public and any victim").

Where, as here, addiction is an underlying issue in a criminal case, the special conditions "may include, but shall not be limited to, participation by [the defendant] in rehabilitative programs."  G. L. c. 276, § 87A.  Indeed, in 1998, this court, in collaboration with the Trial Court, issued standards on substance abuse.  See Supreme Judicial Court Standing Committee on Substance Abuse, Standards on Substance Abuse (April 28, 1998) (Substance Abuse Standards).  They established a "systemwide policy designed to enhance the judiciary's response to the impact of substance abuse on [our] courts."  Id. at 4.  The standards created a framework that would "promote public safety, provide access to treatment, protect due process, reduce recidivism, [and] ensure offender accountability" (emphasis added).  Id. at 5.  One of the standards addressed directly the issue of requiring a defendant to remain drug free, stating, "[O]nce [a] judge has concluded

that a party's substance abuse is a factor in the case, in supervising criminal . . . cases and in establishing court ordered substance abuse conditions, the judge should <u>specifically and unambiguously prohibit the party from all use of alcohol an illicit drugs</u>" (emphasis added).  <u>Id</u>. at 27.  The standards also recognize that relapse is a "common" problem and judges "should . . . employ strategies <u>consistent with public safety</u> to prevent it" (emphasis added).  <u>Id</u>. at 3.

For these reasons, judges have great latitude in imposing conditions of probation, and those conditions are enforceable "so long as the condition is 'reasonably related' to the goals of sentencing and probation."  <u>Commonwealth</u> v. <u>Obi</u>, 475 Mass. 541, 547 (2016), quoting <u>Lapointe</u>, 435 Mass. at 459.  Even where a condition of probation affects a constitutional right, it is valid if it is "reasonably related" to the goals of sentencing and probation, in light of the defendant's underlying crime and her particular circumstances.  See <u>Commonwealth</u> v. <u>Power</u>, 420 Mass. 410, 416-417 (1995), cert. denied, 516 U.S. 1042 (1996); <u>Lapointe</u>, <u>supra</u>.  Although random drug and alcohol testing constitutes a search and seizure for constitutional purposes under art. 14 of the Massachusetts Declaration of Rights, such testing is nonetheless a permissible condition of probation so long as it is reasonably related to legitimate probationary goals.  <u>Commonwealth</u> v. <u>Gomes</u>, 73 Mass. App. Ct. 857, 859

(2009).  See Commonwealth v. Williams, 60 Mass. App. Ct. 331, 332-333 (2004) (alcohol-free condition of probation permissible when reasonably related to characteristics of defendant and underlying crime).  See also Robinson v. California, 370 U.S. 660, 664,665 (1962) ("There can be no question of the authority of the State . . . to regulate the . . . use of . . . drugs [through, inter alia] a program of compulsory treatment for those addicted to narcotics[,] . . . [even requiring] involuntary confinement [and] penal sanctions for failure to comply with established compulsory treatment procedures" [quotations and citation omitted]).

When a defendant is released on probation, his or her liberty interest is conditional and depends on that defendant's compliance with the conditions imposed by the sentencing judge. Commonwealth v. Wilcox, 446 Mass. 61, 64 (2006); Durling, 407 Mass. at 115.  "If a defendant violates one or more conditions of probation, a judge may revoke his probation and sentence him to a term of imprisonment for his underlying conviction, or return the defendant to probation, with new or revised conditions."  Goodwin, 458 Mass. at 15.  A defendant who violates probation is not being punished for violating a condition of probation, but rather "the defendant is essentially being sentenced anew on his [or her] underlying conviction." Id. at 17.

Here, the defendant pleaded guilty to larceny and admitted that her drug use motivated her to commit the crime. The sentencing judge imposed the special conditions that the defendant remain drug free, continue outpatient drug treatment, and submit to random drug screens. The conditions directly addressed the defendant's personal circumstances and, significantly, her stated motivation for committing the crime -- purchasing illegal drugs. See Goodwin, 458 Mass. at 16. Not only were these conditions tailored to the characteristics of the defendant and the underlying crime, they furthered the rehabilitative goal of probation by facilitating treatment for the defendant's drug addiction. These conditions also furthered the goal of protecting the public, because each condition addressed the fact that the defendant's drug use motivated her to commit the crime. We note that the defendant does not claim or point to anything in the record that shows that, before agreeing to her probationary conditions, she objected, informed the judge that she had been diagnosed with SUD, or otherwise notified the judge that she would be unable to abide by the drug free condition of probation. See Commonwealth v. Vargas, 475 Mass. 86, 93 (2016) (by agreeing to abide by probationary condition of no marijuana use, defendant agreed to be subject to probation revocation for noncompliance). See also Obi, 475

Mass. at 549  (defendant waived challenge to probationary condition that was not raised at sentencing).

The defendant argues that because she suffers from SUD, requiring her to remain drug free sets her up for unconstitutional cruel and unusual punishment when the inevitable relapse occurs.  As discussed, revoking or modifying conditions of probation is not a punishment for drug use but for the underlying crime.  See Goodwin, 458 Mass. at 17.  We also agree with the Commonwealth that the defendant's claim of SUD rests on science that was not tested below.  Nor do we agree with the defendant that the requirement of remaining drug free is an outdated moral judgment about an individual's addiction. Rather, informed by the substance abuse standards discussed supra, the requirement is based on the judge's consideration of the defendant's circumstances and that she committed the underlying crime to support her drug use.

The judge here did not abuse her discretion by imposing the special condition of probation requiring the defendant to remain drug free.

b.  Probation violation proceedings.  i.  Detention hearing.  Where there is reason to believe that a defendant violated a condition of probation, a probation officer may initiate probation violation proceedings.  See Rule 4(b) of the District/Municipal Court Rules for Probation Violation

Proceedings (LexisNexis 2016) ("Violation proceedings shall be commenced by the issuance by the Probation Department of a Notice of Probation Violation and Hearing").  A detention hearing is conducted where the probation department seeks to have a defendant held in custody for some period of time pending a final probation violation hearing.  See Rule 5(a) of the District/Municipal Court Rules for Probation Violation Proceedings.  The issues to be decided at the detention hearing are "whether probable cause exists to believe that the probationer has violated a condition of the probation order, and, if so, whether the probationer should be held in custody." Id. (question of revocation or other disposition not at issue). See Commonwealth v. Puleio, 433 Mass. 39, 41 (2000) (defendant may be held in custody pending completion of final probation violation hearing).

Where the judge determines that the allegation is supported by probable cause, the judge must then consider a number of factors in determining whether the defendant should be held in custody pending the final probation violation hearing:

> "(i) the probationer's criminal record; (ii) the nature of the offense for which the probationer is on probation; (iii) the nature of the offense or offenses with which the probationer is newly charged, if any; (iv) the nature of any other pending alleged probation violations; (v) the likelihood of [the] probationer's appearance at the probation violation hearing if not held in custody; and (vi) the likelihood of incarceration if a violation is found following the probation violation hearing."

See Rule 5(c) of the District/Municipal Court Rules for Probation Violation Proceedings. Much like the judge's individualized analysis of the defendant's circumstances in setting the terms of probation, a judge at this stage must consider the particular circumstances facing a defendant, as well as the safety of the public.

Trial court judges, particularly judges in the drug courts, stand on the front lines of the opioid epidemic. Judges face unresolved and constantly changing societal issues with little notice and, in many situations, without the benefit of precedential guidance. In circumstances where a defendant is likely addicted to drugs and the violation in question arises out of the defendant's relapse, judges are faced with difficult decisions that are especially unpalatable. This is particularly true at a detention hearing where a judge must decide whether the defendant should be detained prior to a final violation hearing. The core of this dilemma is that although probation violations often arise out of a defendant's relapse, we recognize that relapse is part of recovery. See Standards on Substance Abuse, supra at 5 ("Treatment does not always work the first or even the second time, [and] relapse should not be cause for giving up on a substance abuser"). To achieve this delicate balance, judges must have the authority to detain a defendant

facing a probation violation based on illicit drug use pending a final violation hearing for the safety of the defendant and the community.  See Rule 5 of the District/Municipal Court Rules for Probation Violation Proceedings.  Such decisions should be made thoughtfully and carefully, recognizing that addiction is a status that may not be criminalized.  See Robinson v. California, 370 U.S. 660, 666 (1962) (unconstitutional to criminalize status of addiction).  But judges cannot ignore the fact that relapse is dangerous for the person who may be in the throes of addiction and, often times, for the community in which that person lives.

Here, on the Friday before the Labor Day weekend, the defendant tested positive for fentanyl.  After the defendant rejected inpatient treatment, and with her home support network unavailable, the defendant's probation officer initiated the probation violation proceedings and moved for a detention hearing that day.  At that hearing, the judge determined that there was probable cause to believe the defendant had violated the drug free condition of her probation, based on the results of the drug test.  The judge first sought to have the defendant admitted to an inpatient treatment facility pending her final violation hearing; however, a placement was not immediately available.  To stabilize the defendant's situation, the judge held her in custody until a placement at an inpatient treatment

facility became available.  This decision clearly encompassed the factors enumerated in Rule 5(c) of the District/Municipal Court Rules for Probation Violation Proceedings, particularly the nature of the offense for which the defendant was on probation and the nature of the alleged violation, while furthering the overarching goal of preserving the safety of the public and welfare of the defendant.  The judge was faced with either releasing the defendant and risking that she would suffer an overdose and die, or holding her in custody until a placement at an inpatient treatment facility became available.

The defendant claims that the judge's decision to detain her constituted a punishment for her relapse and positive drug test.[7]  We do not agree.

---

[7] We note that neither the limited facts in this case nor the law of the Commonwealth supports the defendant's assertions that addiction has been criminalized or that relapse is being punished.  The case before the court is unlike Robinson v. California, 370 U.S. 660, 665-668 (1962), where the United States Supreme Court concluded that a statute criminalizing the status of being "addicted to the use of narcotics" was unconstitutional.  The Court in Robinson emphasized that the unconstitutional statute at issue did not criminalize the use of narcotics, but rather the status of being addicted to narcotics. Id. at 666.  In contrast, here the defendant was subject to probation revocation proceedings due to her use of an illegal drug.  Robinson is inapposite to our analysis because this case represents an appropriate exercise of judicial power at each stage of the probation proceedings, not the criminalization of the defendant's status. Id. at 665 (reciting actions State may take to regulate narcotic drugs including involuntary confinement for compulsory treatment and penal sanctions for failure to comply with treatment).

Revocation proceedings are not part of a criminal prosecution. See Durling 407 Mass. at 112, citing Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973). The decision to hold the defendant in custody is akin to a bail decision, and no final determination has been made concerning whether she violated a condition of probation. See Rule 5 of the District/Municipal Court Rules for Probation Violation Proceedings. See also Commonwealth v. Odoardi, 397 Mass. 28, 30 (1986) (disposition of probation does not punish act prompting probation violation proceedings, and arises from "underlying offense for which a probationary sentence originally was imposed"). Moreover, here the judge detained the defendant because a placement at an inpatient treatment center was not available. Although we recognize that the number of inpatient treatment placements is limited, the resolution of that problem concerns public policy and cannot be addressed by a judge. Detaining a defendant may be permissible to protect the public and the defendant. See Robinson, 370 U.S. at 667 (imprisoning person afflicted with addiction is cruel and unusual punishment only where person "never touched any narcotic drug within the State or been guilty of any irregular behavior there"). The judge did not abuse her discretion in detaining the defendant pending a probation violation hearing.

ii.  Probation violation hearing.  Following an initial determination at a detention hearing that there is probable cause to believe that a condition of probation was violated, a defendant is entitled to a final probation violation hearing to determine whether a violation occurred, and, if so, what effect the violation will have on his or her status.  See Rule 6 of the District/Municipal Court Rules for Probation Violation Proceedings.

The probation violation hearing is comprised of two distinct phases: (1) the adjudicatory phase, and (2) the dispositional phase.  See Rule 6(b) of the District/Municipal Court Rules for Probation Violation Proceedings.  See also Commonwealth v. Joyner, 467 Mass. 176, 189-191 (2014).  In the adjudicatory phase the judge must "determine, as a factual matter, whether the defendant has violated the conditions of his [or her] probation."  Commonwealth v. Pena, 462 Mass. 183, 187 (2012), quoting Durling, 407 Mass. at 111.  "A defendant can be found in violation of a probationary condition only where the violation was wilful."  Commonwealth v. Henry, 475 Mass. 117, 121-122 (2016).  See Commonwealth v. Canadyan, 458 Mass. 574, 579 (2010) (absent evidence of wilful noncompliance, defendant could not be found in violation of condition of probation).  See also Commonwealth v. Poirier, 458 Mass. 1014, 1016 (2010) (defendant not responsible for inability to comply with

condition where probation department failed to provide needed equipment). Further, a violation of a probationary condition must be proved by a preponderance of the evidence. See Commonwealth v. Holmgren, 421 Mass. 224, 227 (1995). See also Rule 6(c) of the District/Municipal Court Rules for Probation Violation Proceedings.

At a probation violation hearing, both parties "shall be permitted to present evidence relevant to the issue of the alleged violation [and] shall be permitted to cross-examine witnesses produced by the opposing party." Id. The distinction between the adjudicatory and dispositional phases is important because the "factual decision that a probation violation has occurred in no way compels an order of revocation." Rule 5 of the District/Municipal Court Rules for Probation Violation Proceedings comment (2000), at 80. Therefore, judges must be precise in bifurcating the adjudicatory phase of probation violation proceedings from the dispositional phase.

Where a violation has occurred, the judge must determine the appropriate disposition for the defendant. See Pena, 462 Mass. at 187. See also Rule 6(b) and (d) of the District/Municipal Court Rules for Probation Violation Proceedings. Permissible dispositions include revoking the defendant's probation and sentencing the defendant for the underlying crime, modifying the terms of the defendant's

probation, or reprobating the defendant on the same conditions of probation.  Rules 8(d), 9(b) of the District/Municipal Court Rules for Probation Violation Proceedings.  See Pena, supra.[8] The defendant, in either scenario, is not being punished for violating the probationary condition that triggered the revocation or modification, but rather for the original conviction  See Odoardi, 397 Mass at 30.  See also Commonwealth v. Cory, 454 Mass. 559, 564 (2009) (penalties for probation revocation attributed to original conviction, not to probation violation).  In other words, when a defendant's probation is revoked because he or she has "abused the opportunity given him to avoid incarceration," Rubera v. Commonwealth, 371 Mass. 177, 181 (1976), by violating a condition of probation, the defendant is imprisoned not for the act or acts that prompted revocation of probation, but rather, the defendant "is being punished for the underlying offense for which a probationary sentence originally was imposed."  Odoardi, supra.

After a violation is found, "[h]ow best to deal with the probationer is within the judge's discretion."  Durling, 407 Mass. at 111.  In determining the appropriate disposition, the

---

[8] A house of correction sentence may also be suspended.  A suspended sentence, however, limits the judge's options should there be a violation of probation after a suspended sentence has been imposed, because, under Commonwealth v. Holmgren, 421 Mass. 224, 228 (1995), "when probation is revoked, the original suspended sentence must be imposed."

court shall consider "such factors as public safety; the circumstances of any crime for which the probationer was placed on probation; the nature of the probation violation; the occurrence of any previous violations; and the impact of the underlying crime on any person or community, as well as mitigating factors." Rule 8(d) of the District/Municipal Court Rules for Probation Violation Proceedings. The defendant is entitled to show that there was a "justifiable excuse for any violation or that revocation is not the appropriate disposition." Pena, 462 Mass. at 188, quoting Black v. Romano, 471 U.S. 606, 611, 612 (1985). See United States v. Morin, 889 F.2d 328, 332 (1st Cir. 1989) (during second stage of probation revocation proceeding, defendant "has the right to address the court and present it with mitigating circumstances").

"Where a defendant has violated a condition of his [or her] probation, a judge's authority to modify or add conditions of probation is nearly unlimited should the judge decide not to imprison the defendant but to return him [or her] to probation." Goodwin, 458 Mass. at 17. At the dispositional phase, a judge's decision to modify the defendant's probation following a violation must consider both the welfare of the defendant and the community. Id. at 16, quoting Buckley v. Quincy Div. of the Dist. Court Dep't, 395 Mass. 815, 818 (1985). Where probation is modified, the defendant is essentially being resentenced on

his or her underlying conviction, and the judge may impose any conditions of probation that could have been imposed at the original sentencing.  Goodwin, supra at 17.

The defendant contends that the District Court judge erred in finding that she violated the drug free condition of her probation because the violation was not wilful.  In the defendant's view, her purported inability to refrain from using drugs is tantamount to a homeless probationer not being able to comply with a condition of probation because of the circumstances inherent in that homelessness.  Canadyan, 458 Mass. at 579.  In Canadyan, we concluded that the defendant did not commit a wilful violation of probation for failing to wear an operable global positioning system (GPS) monitoring device because the evidence conclusively established that the defendant was homeless and that the homeless shelter he was staying at could not accommodate the technological requirements of the GPS equipment.  Id. at 578-579.  Therefore, "there was no evidence of wilful noncompliance."  Id. at 579.  Accord Henry, 475 Mass. at 121-122 (no wilful violation of condition of probation requiring payment of restitution where defendant lacked ability to pay);  Poirier, 458 Mass. at 1016 (no wilful violation of condition of probation requiring defendant to wear GPS device where probation department did not have such device available).

Although the appellate record before this court is inadequate to determine whether SUD affects the brain in such a way that certain individuals cannot control their drug use, based on the evidence presented to the judge who conducted the violation hearing, that judge did not abuse her discretion in concluding that there was a wilful violation of the defendant's drug free probationary condition. The affidavits submitted by the defendant in support of her position that her violation was not wilful because SUD affects the brain in such a way that certain individuals cannot control their drug use did not require the judge to accept her argument. We conclude that, based on the evidence presented at the violation hearing, the judge did not err in concluding that the defendant violated the drug free condition of her probation by testing positive for fentanyl.

After determining that the defendant violated the conditions of her probation, the judge had the authority either to revoke the defendant's probation, reprobate her on the same conditions, or modify her probationary conditions to further the welfare of both her and the public. See Goodwin, 458 Mass. at 17. The judge chose to modify the defendant's probation, requiring that she continue inpatient treatment. This modification furthered the rehabilitative goal of probation and demonstrated that the judge was not discounting the defendant's

addiction. The defendant does not challenge this condition on appeal. Furthermore, this was not punishment for the defendant's positive drug test, rather the defendant was being reprobated on her original admission to sufficient facts. See id. at 17. Accordingly, we conclude that the judge did not abuse her discretion in modifying the defendant's probation to require inpatient treatment and that it was permissible in these circumstances to detain the defendant until an inpatient bed was available.

Conclusion. We conclude that, based on the evidence presented at each stage of the probation process and for the reasons described above, the judge did not abuse her discretion in concluding the defendant violated her probation. We further answer the reported question, as we have reframed it, in the affirmative: (1) where a person who commits a crime is addicted to illegal drugs, a judge may require that person to remain drug free as a condition of probation; (2) a person may be subject to probation violation proceedings for violating the drug free condition of probation by subsequently testing positive for illegal drugs; and (3) in the appropriate circumstances, a judge has discretion at a detention hearing to hold the defendant, who has tested positive for illegal drugs in violation of the drug free condition of probation, pending a probation violation hearing. We further conclude that the actions of the District

Court judges and the probation department involved in this case were exemplary.  They embodied the flexibility, sensitivity, and thoughtfulness in furtherance of the overarching goal of probation -- to rehabilitate rather than incarcerate whenever possible, while fulfilling their duty to protect the public. See Goodwin, 458 Mass. at 15.

Accordingly, we affirm the judge's finding that the defendant violated her probation and the order requiring her to submit to inpatient treatment for her addiction.

So ordered.